Truesdell v. Thomas Well, I don't think so. What? Are you Mr. Jolly? I am. Okay, Mr. Jolly. Please speak to us. Thank you. If it pleases the Court and Mr. Degali, I am Bruce Jolly and I represented the sheriff, the equivalent of the sheriff's office, both at trial and in this appeal. There are four basic issues on appeal. We have an appeal and we have a cross appeal. We do. And the appellant, us, are arguing the propriety of the punitive damage award. Which the statute lists as one remedy under the act. Right? Punitive damages are listed as a remedy. A remedy under the act. Yes. Right? And a municipality is a person under the act, is it not? Yes. Wouldn't it require quite a feat of statutory reconstruction for us to suggest that a municipality who is a person who can be a defendant under the act is not liable for all the remedies set out in subsection B of 2724? I don't think so. Why is that? There are two . . . First of all, there's no cases at this appellant level that is favorable to the plaintiff. There are two cases out of different districts in the Midwest which suggest that if you are on how punitive damages are perceived and utilized when government is a defendant, that government is not to be exposed to an award of punitive damages. The cases are the Senny case out of Illinois, the Malik case . . . The problem with that is you've got the plain terms of the act. The act defines a person as an individual organization or entity, but does not include a state . . . That's true. . . . or agency thereof. And there's no dispute. You're covered. Your client's covered, right? There's no dispute that the sheriff as an entity . . . Yes. . . . falls within the statute? Correct. That is accurate. That's right. And then there's a very explicit provision among the remedies for punitive damages against someone who is a person liable under the act. Yes. I don't think that answers all the questions. I'd like for you to explain to me why. Mostly historical context. Arguably, if governmental immunity for punitive damages is going to be abrogated, it has to be specific. For example . . . Why isn't that specific enough? I do not think so. Why? I think the statute should have said if punitive damage . . . the potential for punitive damages were to be available against a governmental entity, the provision for punitive damages should have said something to the effect, in this particular instance where punitive damages are going to be awarded, we are abrogating immunity as it relates to government. In other words, punitive damages can be awarded. No, no, no, no. I mean, you look at all the cases about even, say, abrogation of state sovereign immunity under the 14th Amendment. When Congress writes in the statute expressly that a person included is a state agency, that's enough. They don't have to say, oh, and we mean to abrogate. That is not the way we read the statute. That's not the way I read it now. No, that's just the way abrogation law works is what I'm explaining. I mean, so you agree that when the statute itself expressly allows for damages that are more than compensatory, then that's all we need from Congress? Yes, Your Honor. I think. Yeah. If they've expressly allowed for the punitive damages against the municipality, if they've got a clear expression of that, that's all we need to have, right? I think that's right. Yeah, you think that's right, but you think that what Congress is obliged to do here is after saying that a municipal agency is a person within the meaning of the Act, and then after providing four specific remedies set out in the statute for persons who are and say, and we mean to include municipalities in the provision for punitive damages. And I'm telling you, what I'm saying to you is my familiarity with abrogation law, even in the context of state sovereign immunity, doesn't require that level of specificity from Congress. When we made this argument, I was relying on fact concerts. I think we read fact concerts to require that if punitive damages were going to be conceptually awardable, that the presumption was that they're not, and only when there is a specific provision which specifically or explicitly abrogates that common law immunity, that punitive damages will not be read as being available against government. Yeah, but all the Supreme Court said is that Congress may specifically provide it, right? They acknowledge that Congress can do it. What I'm suggesting, and you acknowledge that Congress can do it. Yes, Your Honor, I do. What case law supports the notion that this is not enough? I mean, the Act says a municipal agency is a person within the meaning of the Act, and then it sets out four specific remedies for any person liable under the Act. Why isn't that enough? At this level, there are no cases that have interpreted as imposing that kind of possibility. The district court cases... The Act itself seems to do it. Well... But that seems to be pretty specific to me. I understand. I accept your interpretation. I do not agree with it. Under the cases that we have relied on, and as there is no case to the contrary, we felt that the issue, to a certain extent, has been resolved, except not at this level, and it is a case of first impression at this level. I don't think the statute does enough to abrogate punitive... An award of... To abrogate the governmental entity's... Ordinary municipal immunity from punitive damage. Yes, Your Honor. That's what you may decide. I do. Thank you. Let me ask you a question before you sit down. Do you agree that the district court could, in its discretion, award liquidated damages of $5,000, $2,500 for each violation? I'm glad you asked. Do you think that was appropriate? Frankly, I was going to start my argument with, we are abandoning that issue. You... This... The 11th Circuit has already made a determination that the trial court has that discretion. Thank you. So, I wasn't even going to go there. Unless you have additional questions, to the extent there's an issue on the other issues, I'll wait till rebuttal. Okay. Thank you. Thank you, Your Honor. Thank you, Mr. Charlie. Mr. Green. Thank you, Your Honor. John Green. I represent Clayton Thomas in this case. And I do want... The court has looked at the question of punitive damages as it relates to the sheriff. And I would like to address that a little further also. If you look at the language of defining what a person is, they do talk about an individual organization or entity, but does not include a state or agency. I would suggest to the court that the purpose of this is merely to assure that sovereign immunity still exists. And this language is not enough to overcome the fact case or even the two district court level cases that talk about the need to specifically say that you are going to apply punitive damages to municipalities. The reasons for this... Your client wasn't sued in his official capacity, right? He was sued and they were sued in his individual capacity. Yes. And municipal immunity from punitive damages would have no relevance to someone sued in their individual capacity. We've got standing in this, which I think would be the issue, because there is an offer of judgment that is dependent upon what the ruling is of this court. I see. So you're... You're standing... You think I'm standing to make the argument here on behalf of the municipality? Yes, sir. And we would suggest... But that argument rises or falls with what we were discussing with Mr. Jolly. Yes, sir. It would. Okay. But to go ahead and say that the taxpayers who've had no involvement... Think to me that your standing would be... It would be in your interest for the municipality to be liable for punitive damages. Well, we're satisfied with $100 that was assessed against our officer. We have no problem with that and we have not appealed that particular issue. Okay. But I do... Well, my time is up, but I do agree with the argument that was made by counsel. Okay. And do you agree with respect to the liquidated damages issue? On the punitive damage issue? No, liquidated. No, it deals with Mr. Jolly that that's no longer an issue. Yes, Your Honor. We both... You're reading the ally opinion to say that multiple damages are permissible? We would agree with the decision from this court that... I think Ella is the case. Ella. Yes. Ella. The Ella case, I think, is just... Ella. The issue in Ella was whether or not multiple awards are required under the statute, not whether they were permitted. The issue was squarely whether they were required. And there's language in the opinion that says, well, they're not required and it seems like they're not barred. Use the word seems. But the question of whether or not they are permissible was not squarely presented in that case. Okay. How can it be binding authority on the question in front of us? Well... Is there language in Ella that deals with permissiveness of multiple event damages dictum? Mr. Jolly was the one that argued Ella. And the reading of it seemed to indicate it was discretionary. We're talking about the decision of the circuit in Ella. I certainly, if the court believes that Ella is not dispositive, I will argue. Okay, Mr. Green. Thank you. Mr. Degali. Thank you, Your Honors. If it pleases the court, I'm Andy Degali. I have the honor of representing Kelly and Truesdell of Ocala, Florida, which is Marion County. Your Honors, I disagree with one aspect of Mr. Jolly's presentation. It indicated there is no authority at this level that stands for the proposition that punitive damages can't be awarded against a sheriff. That would be the Ella decision of this court. Judge Wilson wrote that decision and specifically stated in the case as one of the bases for the determination that the court has discretion to allow only one or more liquidated damages. That court, that decision, did not hold that municipal defendants liable under the Act are not immune from punitive damages. It did not hold that, did it? Correct. I propose only, Your Honor, that Judge Wilson… It appears to me that the plain language of the statute provides for it. Judge Wilson did say in what is apparently dicta that that statute specifically provides for punitive damages to deter conduct by the local law enforcement agency. That's one of the bases for the liquidated damages rule. Your Honors, we're the appellant here on a couple of issues. One relates to the jury instruction. This jury came back at the end of the trial and asked a question of his honor and related to punitive damages. And the judge answered the question with respect to punitive damages and added a sentence. He added that punitive damages have to bear a reasonable relationship to compensatory damages. We suggest, Your Honors, that that is contrary to law and that that misled the jury. The Supreme Court of the United States has said that, hasn't it? The Supreme Court of the United States has said there should be a correlation between punitive damages and compensatory damages. And a number of circuits have determined that most recently the Fourth Circuit squarely addressing this punitive damage point, that there has to be this relationship but in terms of very small actual damage awards or statutory damage awards, that reasonable relationship is actually more akin to an inverse one than a direct correlation. That is the Fourth Circuit's recent case in Daugherty specifically held that. Here's my problem with this. So it seems that the district court instructed something that is a correct statement of law. That is that the Supreme Court of the United States has said courts must ensure that the measure of punishment is both reasonable in proportion to the amount of harm to the plaintiff and to the general damages recovered. There's no request here to say something more than that, to say something along the lines of what you're saying the Fourth Circuit has said. The question really is whether this instruction was an incorrect statement of law. It's hard for me to see how it was. At a minimum, Your Honor, it has to be an erroneous application of that law, if it be correct, to the factual context here. That is that this jury actually came back with two questions, and the first one was do we have to find actual damages if we find liability? And that was a message that everybody in that courtroom knew at that point this jury is probably not going to award actual damages. And if they do, it will be nominal. And so as soon as the judge gave an instruction that said that punitives have to bear a reasonable relationship to what we already knew were going to be nominal damages, it was a near certainty that this jury was going to award nominal punitive damages. And what the Fourth Circuit recently did in Dougherty is said, well, that doesn't work. That doesn't make sense. They considered a $6,000 compensatory damage award and a $2.5 million punitive award and determined that, well, the smaller the actual damage award, if a single-digit ratio applies, if 5 times 6,000, 30,000, that's not going to deter a mortgage servicer. In this particular case, a $100 punitive damage verdict was entered against Mr. Thomas, and it's absurd to think $100 is going to deter Mr. Thomas from continuing to access data, which is something he did 42,000 times. And the $5,000 punitive damage award against the sheriff of Marion County, it's similarly absurd to think that the sheriff's office of that magnitude is going to be deterred by a $5,000 punitive award in connection with something one of its officers did 42,000 times. And so the idea is, well, there are a number of cases cited. Doherty actually surveys the land, cites a few such as statutory damage award of 1,000, punitive of 80,000. Well, that makes sense because if we only had a $5,000 punitive award and a $1,000 statutory award, well, the perpetrators would have no reason to be deterred. They don't suffer enough potential loss. Is your argument that it would always be improper to give this instruction or it was only erroneous in this context? Because what you said about what the jury had already indicated regarding actual damages. This might be an appropriate instruction in a case against Microsoft or a Dow 30 sort of company in that they're already going to perhaps suffer a large compensatory damage award or be exposed to one in this situation. The court knew that was not going to happen here. And so to not give the jury a little more guidance than this was erroneous. We asked the district court to give more guidance than this. Did you say, well, you know, Your Honor, if you give this instruction, you need to say some other things too. Your Honor, I do know we objected to the inclusion of this sentence. I'm not prepared to tell you at this moment what. See, I didn't see where you said anything of the kind. It may be that you objected to this statement. Your Honor, I believe you. But did not suggest what the problem here is that you're not saying more. The presentation was, the gist of it being that it was Judge Hodges' purview to after that jury award came back to determine by remitter whether the jury had gotten out of hand, if you will. And he could address this reasonable relationship himself after the jury award came back. With respect to the issue of denial of certification, there's been a suggestion that Ms. Truesdale has abandoned that. We disagree. I don't think you've abandoned it. But you've got a tough burden there, Eric, because you have to show, do you not, that the district court abused its discretion when it declined to certify a class, either pre-trial or post-trial, right? Yes, sir. And the district court concluded that there were problems of commonality, typicality, superiority, all of which seem to me to be right. I mean, it's not at all clear whether there might have been some legitimate reasons for some of the searches or not, which then gets you into individual specific determinations with respect to the individuals whose names were searched. And then that's just not the sort of thing that is amenable to class treatment. How am I wrong about that? Your Honor, even if we propose that, okay, the cited reasons for denying certification on its substance were accurate, and I disagree with that notion, but it was within the judge's discretion to address that. It brings to the fore the idea of, okay, well, what happens next? When he found those things, there are a couple of different things the judge is empowered to do under Rule 23. One is to approve subclasses. He could certify a subclass rather than just rejecting certification completely. You know, see, the individuals whose names would have been searched for a legitimate reason wouldn't be a subclass. They wouldn't have had a claim. What ended up playing out, Your Honor, and for purposes of the post-trial motion, there wasn't any evidence of that. How would you define the subclasses? Well, the subclass that can be certified right now is one seeking statutory damages. That's exactly what Ms. Truesdell suggested before certification. But the problem was the district court said, I can't determine that this plaintiff has a claim that's common, typical, for which class action treatment would be superior for everyone else who was the subject of a search because it may be that many of these searches were, in fact, legitimate, or some or many. There's two aspects to that. Pre-trial, we suggested that that's not the evidence anyway. He has said why he did these searches, and it was not for that purpose, but that was the trial testimony. So post-trial, the trial had already played out, and the judge could address this. So we asked him to, on the motion to alter amend, to certify a class and at least retry punitive damages and certify a class with respect to statutory damages. So what the court could have done early on, even if it had these concerns and they were legitimate regarding commonality, the court is encouraged by Rule 23 to certify subclasses. There could have been a notice-only subclass, and there could have been a statutory damage subclass. I do not understand that argument. I mean, I'm sorry, I just don't follow it. It's not that, as I understand what the district court was saying, the district court was not saying that there are lots of individuals, all of whom have suffered harm in violation of the law, but they've done it in different ways. So they would be, that would be the sort of thing that might be amenable to subclasses. My understanding was what the district court was saying is there are a lot of people whose names were searched, some of whom would, like your client, have a claim, and others who don't. They're not, they wouldn't be in a subclass. They would be not a plaintiff because they don't have a claim, right? The evidence that was adduced at trial established there are no such people. There are no people who were legitimately searched. That was the testimony. I thought you said that the testimony at trial was that there were different reasons for different individuals, and what he was saying was that some were legitimate and some were not. Your Honor, if I said that, I misspoke badly. No, the testimony at this trial, in the sworn statement before trial, was that I'd just like to see. That is, he was perusing pictures of ladies in their driver's license records. And then at trial, he has attested that there was no legitimate law enforcement purpose for any of these searches. And so, at least for purposes of the post-trial motion, that was established. And with respect to all the seven categories that the judge was concerned about for commonality, pre-trial he might have certified a subclass as to those. Do you have a cite to the record in front of us where that testimony came in? I'm sorry, Your Honor. I know it's in the briefcase. Is it in the record, presently in front of the court, or do we have to get the whole trial record? Yes, sir, it is in the briefcase. I thought he had asserted that he had legitimate reasons for some of the searches. That was an assertion he made prior to the lawsuit being filed. He had given a sworn statement, and then he gave a statement in an internal affairs investigation. But that was not his testimony at trial. Well, at trial he testified, sometimes if I wanted to check out some individuals, maybe we got some suspicious cars out in the parking lot, people walking around. We would go out and check them out. Isn't that a legitimate, isn't that an assertion of a legitimate purpose? He says to make sure they're not wanted or that they have any criminal histories. Your Honor, I'm not exactly sure why that is a legitimate law enforcement purpose. And the supervising sergeant, excuse me, officer, he did not defend any of these. I'm sorry? Is it clear that that's not? It's clear that that is not a law enforcement purpose for a bailiff at the courthouse. Your Honor, if I may, the court also refused to. Why is it not law enforcement? Your Honor, the. You have to tell us why. Your opinion is respected, but it's only worth the rationale behind it. That rationale at least is supported by the major in this instance. You mean the fact that there were some impermissible viewings means that he was lying when he said that? I don't follow, Your Honor. Well, I thought we had read from the record, a viewing of the record that it seemed to be for legitimate law enforcement purposes. Yeah. And you were asked by the presiding judge, isn't that so? And you said, no, it's not for law enforcement purposes. And I just wanted to push you a little bit. I recall the trial testimony, and I do not recall that aspect of the transcript. I recall sitting there and that. Well, the transcript will show whatever it shows. Yes. With respect to that certification denial, it was also made without prejudice. There could have been a number of solutions offered by amendment that would have cured any of the court's concerns as to that. At the end of the day, one commonality issue raised by the judge was that these ladies should not get notice. There was the idea that we could have a notice-only class. Ms. Truesdale proposed to serve notice. That, in our view, respectfully, doesn't appear to be the judge's purview to decide that these ladies are better off not knowing. Ms. Truesdale came to this with the intention of making sure they knew. And that would have been a class that could have been certified. And it wasn't. So thank you, Your Honors. Thank you. So, Mr. Jolly, you've saved three minutes. With respect to punitive damages, interpreting the statute, big picture punitive damage issue. Punitive damages, I would suggest on behalf of the sheriff, really don't serve the public. The sheriff, his agency, acts only through his employees. The punitive damage award, conceptually, is best available to punish those individuals whose behavior was particularly egregious. Punishing government, punishing the taxpayers, does not serve that deterrent public interest. Well, that policy argument seems to me to be wholly irrelevant. As I understand it, the law is that we've got to decide whether there's a clear expression by Congress in the statute to dispense with the ordinary municipal immunity from punitive damages. If there is a clear expression, the policy judgment is for Congress to make. Then we have to honor it. If there's not, then we have to respect the municipal immunity. It really rises or falls with that, doesn't it? We have been taking a position that the clear expression has to be an abrogation. The presumption is punitive damages are not awardable. I understand what the presumption is. And you agree with me that Congress has to provide a clear expression to overcome that presumption, to get rid of that presumption, right? That's accurate. So it really just is about what the statute says. It's not about the policy. No, but I thought I'd throw that in because I liked it. That was the sexy part of the argument. Okay. Sorry. It's been a long morning, Mr. Collins. But I've got a couple of quick points to make with you all. Obviously, part of what we've been arguing all along is who cares about the punitive damages award, whether the jury instruction was right, at least as it relates to the sheriff, simply because we've never thought the punitive damages are conceptually awardable. Several of your questions focused on how this matter was handled in terms of the class certification. My memory of the trial is that there was no focus on what Thomas did as it relates to others. It really wasn't explored. And that's because we were – It was really about Ms. Truesdale, right? That's what we thought. Yes, Your Honor. We did think that. And that was the focus of the trial. Frankly, that was what the trial was about. Now, what we are suggesting – I think there was some creepy stuff going on with this guy. I don't want to say that. I don't mind saying it. I will tell you, as this case was being litigated, those of us on the defense side were kind of going, what? Okay. Your time's expired. If you've got a point you absolutely must make, I'm going to give you – Just what I wanted to ask you to do, but you know that anyway. Thank you, folks. Thank you, Mr. Cagliari. Mr. Green. I'm not entirely sure what it is that you're going to tell us, Mr. Green, in your two minutes. Only that when we're talking about creepy Clayton Thomas, that he was punished severely as a result of this. Even if the jury came back with only $100 in punitive damages, he lost close to a quarter of a million dollars. All of which the jury was aware of, right? The jury was well aware of it. And the question that came back did not ask about – The question is, does he need to suffer more? Correct. And the question the jury asked was if we decide to award against the sheriff's office, not against Thomas. But on the issue of punitive damages, we strongly believe that that statute, as written, is not enough to require the taxpayers to bear the burden of improper actions on the part of an agency. Thank you, Mr. Green. We have your case. We'll be in recess until tomorrow morning. All rise.